# AUGUSTUS B. CALLIS *vs.* WM. MERRIEWEATHER.

*Action for Alienation of Wife's Affections.*

An action lies for alienating from the plaintiff the affections of his wife or causing her to behave in such manner as to destroy the comfort of married life, although there is no proof of adulterous relations between defendant and plaintiff's wife.

The evidence in the case examined and held to support instructions authorizing the jury to award punitive damages to the plaintiff.

Appeal from the Baltimore City Court (DENNIS, J.)

The cause was submitted to the Court on briefs by:

*George M. Lane*, for the appellant.

*F. A. Buschman*, for the appellee.

JONES, J., delivered the opinion of the Court.

The appeal in this case is from a judgment obtained in the Court below by the appellee against the appellant upon the cause of action which the *narr.* in the case sets out as follows: "For that on the 12th day of November, 1879, the plaintiff (appellee here), intermarried with Sallie W. Merrie-

weather, and that up to the time of committing the wrongs alleged herein, have been living together as man and wife. And the plaintiff alleges that the defendant, (appellant here), the said Augustus B. Callis, contrived and wrongfully intended to deprive him of the comfort, society, aid, and assistance of the said Sallie W. Merrieweather, the wife of the plaintiff, and to alienate her affections for him, unlawfully and unjustly gained the affections of his said wife, whereby the plaintiff was forced to leave and abandon her, whereby the said plaintiff lost the comfort, company, society, aid and assistance of his said wife and her affections for the plaintiff, were wholly alienated and destroyed."

The *narr.* is awkwardly constructed, but the substance and meaning of its allegations are sufficiently plain. At the trial of the case no question appears to have arisen upon the pleadings or upon offers of evidence. At the conclusion of the evidence the appellee (plaintiff below), offered for the approval of the Court three instructions to the jury, all of which were granted. The appellant (defendant below), offered five of which the first was refused, the second withdrawn and the third, fourth and fifth were granted by the Court. The prayer which was refused (the first), asked that the jury be instructed "that there is no evidence legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant." To the granting of appellee's prayers and each of them, and the rejection of the appellant's first prayer the appellant excepted. This is the single exception presented for the consideration of this Court; and this, we think, is free from difficulty.

The record presents no question that makes it necessary or appropriate to go into a general discussion of the law applicable to the class of actions to which the one here under consideration belongs. We have said in *Wolf* v. *Frank*, 92 Md. 138: "There has been but little, if any, difference of opinion as to the right of a husband to sue for what is termed 'the loss of consortium' that is the loss of his wife's society, affection and assistance, and when any one, by the alienation of

her affections, deprives him of his conjugal rights he is liable to respond in damages." We find it stated in *Cooley on Torts*, 225, (marg.): "The action for seducing the wife away from the husband is by no means confined to the case of improper and adulterous relations, but it extends to *all cases* of wrongful interference in the family affairs of others whereby the wife is induced to leave the husband *or to so conduct herself that the comfort of the married life is destroyed.*" The italics are ours. In support of the text just quoted reference may be had to *Hermance* v. *James*, 47 Barb. N. Y. 123, and to *Rinehart* v. *Bills*, 82 Mo. 534.

Both the *narr.* and the evidence here bring this case within the law as thus laid down—the *narr.* in its allegation of fact and the evidence in its tendency to prove the allegation of fact in the *narr.* There was evidence to the effect that the appellant was the pastor in charge of the church in which the appellee's wife was the organist; that the appellant evinced a partiality for her society; was frequently seen with her; went frequently to the appellee's house in his absence—more frequently going in the back way than the front; that appellant's attentions were so persistent and noticeable as to excite criticism and comment among the members of the congregation some of whom called appellant's attention to rumors and comment as to his attentions to and relations with the appellee's wife, but without producing a change of conduct upon the part of the parties concerned. One witness testified that he had so frequently seen the appellant and appellee's wife together that he thought they were man and wife; the son-in-law of the appellee testified that he had, after his marriage to appellee's daughter, lived with the latter at the appellee's house and that one of the reasons why he left the house and his wife was on account of the frequent visits of the appellant to the appellee's wife. The appellee himself testified to his marriage; that he had always lived happily with his wife and family; that they had one child; that he had had "all the confidence in the world" in his wife; that he provided fully in every respect for his family; that some of the members of the

church and others told him about the appellant walking so
frequently with his wife; that the appellant called to see him
when he told appellant that he had been waiting to see him;
that his wife was cold and indifferent towards him (appellee),
and that he (appellant), was the cause of it and was living in
adultery with his (appellee's) wife; that appellant did not deny
this; that appellant visited his (appellee's) house five or six
times a week; had seen him go there frequently; and finally
that he had separated from his wife, because of the many re-
ports made to him by church members and others as to the
relations between the appellant and his (appellee's) wife; and
because he believed the appellant had committed adultery
with her.

The Court instructed the jury on behalf of the plaintiff in
plaintiff's first prayer that if they found "from the evidence
that the defendant wrongfully alienated the affection of the
plaintiff's wife from him, whereby he lost the society, com-
panionship and assistance of his wife, then their verdict should
be for the defendant; in the plaintiff's second prayer that they
were "at liberty to take into consideration · *   *   *   all the
facts and circumstances adduced in evidence," and if they
found for the plaintiff might give such damages as would
compensate him for the injury to his feelings, and the loss of
his wife's affection, society, assistance and companionship; and
in the plaintiff's third prayer that if they found that the de-
fendant wantonly and maliciously alienated the affection of
the plaintiff's wife whereby he lost the society, assistance and
companionship of his wife they might, in addition to compen-
satory damages, give such sum as they might think "just and
proper as exemplary or punitive damages as a punishment to
the defendant."

There was testimony going to support all of these instruc-
tions the credibility and weight of which were for the jury.
As to their particular structure no special exceptions were
filed to any of them and whether they or any of them were
open to such exceptions is a question not before us.  The
Court also gave an instruction of its own that the jury in

making up their verdict were "not to consider any alleged adulterous intercourse between the defendant and the plaintiff's wife, as there is no evidence in the case legally sufficient to sustain the allegation of adulterous intercourse." On behalf of the appellant the jury were instructed that they, in making up their verdict, might "take into consideration any unhappy relation existing between the plaintiff and his wife, not caused by the conduct of the defendant; that to find a verdict for the plaintiff they must find that the cause of the separation between the appellee and his wife was due to the conduct of the defendant, and but for his conduct the separation would not have occurred; and that if they found plaintiff and his wife were not living together and the cause of the separation between them "was due to the plaintiff's own conduct and through no fault of the defendant, then their verdict must be for the defendant." With these instructions in connection with those granted at the instance of the appellee the case was submitted to the jury as favorably to the appellant as he could ask and we see no cause for disturbing the judgment. It is apparent from what has been said that the appellant's first prayer was properly refused and the exception to the granting of the appellee's prayers cannot be sustained. The judgment below will be affirmed.

> *Judgment affirmed with costs to the appellee.*

(Decided January 12th, 1904.)