# FLETA ANNARINA

## *vs.*

## MARGARET A. BOLAND.

*Husband and Wife—Alienation of Affections—Effect of Separation of Spouses—Plaintiff's Misconduct—
Evidence—Instructions.*

In determining the correctness of a prayer directing a verdict for defendant for lack of evidence, the court assumes the truth of all the evidence before the jury tending to sustain the claim or defense as the case may be, and of all inferences of fact fairly deducible from it, and this though such evidence be contradicted in every particular by the opposing evidence in the cause.                                                                     p. 373

If a prayer directing a verdict for lack of evidence is offered at the conclusion of the whole case, all the evidence of both parties must be considered.                                           p. 373

In an action on account of the alienation of the affections of plaintiff's husband, the evidence was sufficient to go to the jury, there being testimony that plaintiff and her husband lived together happily until 1909, when the husband left their home, immediately before which occurrence defendant and he were seen coming out of a house of ill-fame; that shortly thereafter he confronted plaintiff with a false affidavit that she had committed adultery, and instituted a suit for divorce on account thereof which he failed to maintain; that during the pendency of such suit defendant and he were seen coming from a hotel and also from his office at night; that in 1910 or 1911 he repeatedly committed adultery with defendant; that the latter tried to hide her relations with him; that after plaintiff gave up possession of their former home the husband installed defendant there as his mistress, she assuming his name with his consent; and that he desired to resume marital relations with plaintiff, but was prevented by defendant's threats.            pp. 373, 374

That the husband and wife are living apart, whether under articles of separation or not, is not a bar to an action for the alienation of affections or criminal conversation.        pp. 374-377

One does not, by executing a deed of separation, waive any pre-existing right of action against a third person for alienation of the affections of the other party to the marital relation.
p. 378

In an action for alienation of the affections of plaintiff's husband, it was proper to refuse an instruction that the jury "may take into consideration any unhappy relations existing between the plaintiff and her husband not caused by the conduct of the defendant," which failed to tell them how such finding was to affect their deliberations or influence their opinions, or whether it was to be considered in bar of the action or in mitigation of damages.                    p. 378

The gist of an action for alienation of affections being, not the separation of the parties, but the loss of affection, it was proper to refuse an instruction that the verdict must be for defendant if the jury find that plaintiff and her husband are not living together, and that the separation was due to plaintiff's own conduct, and was not the fault of defendant.     p. 379

In an action for the alienation of the affections of plaintiff's husband, it was error to instruct the jury that if they found "any misconduct on the part of the wife, then such misconduct is no bar to the action," since it might well have been that the plaintiff's own misconduct caused the loss of her husband's affections, in which case defendant could not have been the cause of such loss.                    p. 379

A question asked on cross-examination, which assumed that the witness had committed larceny, was properly excluded, the witness having previously testified merely that he had been indicted and pleaded guilty, and that he had been in jail "for keeping bad company."                    p. 380

In an action by a wife on account of the alienation of her husband's affections, it was proper to exclude testimony by their son as to a letter written by him to his father asking for money.
p. 380

In an action by a wife on account of the alienation of her husband's affections, it was proper to exclude a question sought to be asked of their son, whether he did not live with the woman whom he married before marriage, this being entirely collat-

eral to any issue in the case, and not bearing on the credibility of the witness, and its only possible purpose being to degrade and humiliate him. p. 380

In an action on account of the alienation of the affections of plaintiff's husband, that the latter had sworn out a peace warrant against plaintiff could not be proved by asking their son whether this was the case. p. 381

A witness may properly be asked whether he has been convicted of a crime, this bearing on his credibility. p. 381

In an action on account of the alienation of the affections of plaintiff's husband, plaintiff having testified that before the institution by her of a divorce proceeding, defendant had improper relations with the husband, and that the separation between her and her husband was caused by defendant, it was error to exclude a question, asked on cross-examination of plaintiff, whether, at the hearing of the divorce proceeding, she had not produced another woman as the one with whom the husband had improper relations, this having a direct bearing on the value of her testimony, and also being a fact which might properly be considered in mitigation of damages. p. 381

In an action on account of the alienation of the affections of plaintiff's husband, it was error to exclude questions asked of plaintiff, whether her husband did not, in a bill for divorce, accuse her of adultery, and whether he did not show her an affidavit charging her with adultery with the affiant, testimony as to these matters reflecting on the relations between plaintiff and her husband at the time. p. 382

Evidence that the husband had filed a bill for divorce against plaintiff, and that she had filed a cross-bill alleging adultery with a woman other than defendant, was admissible as showing the feeling of the husband and wife towards each other, and so as bearing on the question of damages. p. 382

The contents of a judicial record cannot be shown by parol. p. 382

In an action on account of the alienation of the affections of plaintiff's husband, the testimony given by a witness in a divorce proceeding between them was not admissible, the issues and the parties not being the same, and it not appearing that the attendance of the witness could not have been secured. p. 383

Decrees in the divorce proceeding and the opinion therein were admissible as bearing on the question of damages.    p. 383

The contents of a magistrate's warrant cannot be shown by parol.                                                          p. 383

Evidence that plaintiff had "brought and prosecuted an indictment against" the husband, that she had committed adultery, and that because of this a divorce decree previously granted her was struck out, was admissible in mitigation of damages.
                                                                  p. 383

A mass of extrinsic and irrelevant matter having been inserted by appellant in the record, it was decreed, upon reversal of the judgment, that the costs of the appeal be divided between the two parties.                                             p. 384

*Decided April 23rd, 1920.*

Appeal from the Baltimore City Court (DUFFY, J.).

The defendant's thirteenth prayer, referred to in the opinion as having been refused, was as follows: "The Court instructs the jury that if they find that the plaintiff and the plaintiff's husband are not living together, and that the cause of the separation between the plaintiff and her husband was due to the plaintiff's own conduct and through no fault of the defendant, then their verdict must be for the defendant." (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*William Purnell Hall* and *Isaac Lobe Straus,* for the appellant.

*David Ash,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Baltimore City Court entered November 8th, 1919, on the verdict of a jury in favor of the plaintiff in an action on the case by Margaret A. Boland against Fleta Annarina, for alienating the affection of John H. Boland, the plaintiff's husband.

In the declaration the plaintiff states that she is the wife of John H. Boland, and that the defendant knowing that, "did heretofore" by divers and devious means, alienate the affections of the said John H. Boland, and "did thereby obtain" from him sundry sums of money and a house, so that as a result, the plaintiff's home was broken up, she was separated from her husband, and he and the defendant lived together in adultery in the home once occupied by the plaintiff. To this declaration the defendant pleaded the general issue, upon which issue was joined.

The facts disclosed by the record briefly stated are these: John H. Boland and Margaret A. Boland were married in Baltimore a number of years ago, and lived there together until July 29th, 1909, when they separated. They have one child, a son twenty-two or three years of age. Up to the time of their separation, Mrs. Boland said, their relations had been pleasant and they lived happily together, but her husband on the other hand in describing their relations said that they had not lived happily together for ten years, and that he did not eat over three meals in his home in a year.

After the separation Mrs. Boland continued to live at their former home, 310 East Twenty-fifth Street, while Boland went to Rowland's Turkish Baths, where he lived for two years, when he reoccupied the Twenty-fifth Street house after his wife had vacated it, and she then went to live at 822 E. Fayette Street.

Oddly enough Mrs. Boland has given no particular account of the separation between her and her husband or of th causes which led to it, except that, in a general way, she attributed it to the appellant's influence. Boland, however,

was more specific. He said that he had obtained from a man named Sapp an affidavit to the effect that he had had improper relations with Mrs. Boland, and with this he (Boland) confronted her. She denied the charge but Boland left the home and on the next day filed a suit against the appellee for divorce on the ground of adultery. In this proceeding Mrs. Boland filed a cross bill in which she also asked for an absolute divorce on the ground that, while she was guiltless, her husband had been guilty of adultery.

The charge made in that suit by the husband that his wife had committed adultery with the person named in the bill of complaint before its institution does not appear to have been sustained, for the Court dismissed the original bill and upon the cross-bill granted Mrs. Boland an absolute divorce from her husband on the ground of adultery. Before that decree was filed Mrs. Boland, in September, 1909, is said to have taken a trip to New York with another woman and two male companions, and to have occupied the same room with one of the men in a hotel for several days. After the decree was signed but before it became enrolled Mrs. Boland filed a petition to have it reformed in respect to the allowance for alimony. In considering this petition the Court, its attention having been called to the New York trip, decided that the decree had been obtained by a fraud upon the Court, struck it out, and dismissed both the original and cross-bills.

On February 1st, 1912, Mr. and Mrs. Boland executed a deed of separation in which the parties, after reciting that "great and irreconcilable differences had arisen between them" and that it had become impossible for them to live together as man and wife, agreed to live apart, and that neither would endeavor to exercise any marital control or rights over the other or to have any marital relations with the other. Under this deed Mrs. Boland received $4,200 for the release and relinquishment of her marital rights in her husband's property and of any claim she might have to support from him.

After the execution of this deed Mrs. Boland moved to 822 E. Fayette Street, and her husband, after having some repairs made to it, moved back to his former home on Twenty-fifth Street.

Shortly after that he installed the defendant Fleta Annarina in his home ostensibly as housekeeper, in which position she has since remained. Her duties, at least in the beginning, appear to have been light, and her treatment kind. With the assistance of a housemaid she kept the six room house in order and looked after the needs of her employer. Later Mr. Boland's mother, a paralytic, came to live with them and then the appellant was also required to and did nurse and care for her.

Just when Boland first met this woman is not at all clear from the testimony. He testified he first met her in 1911 and the appellant also places their meeting in the spring of 1911, but Mrs. Boland testified that she first knew of Boland's misconduct with the appellant when the appellee and Boland were still living together; that before they had had any trouble at all she saw him and the appellant coming from a house of ill fame; that while at that time she did not know who the woman with her husband was she later recognized the appellant as the woman; that while her divorce case was pending she saw her husband and the same woman come from a hotel and enter an automobile, and that at about the time of their separation she saw the appellant and Boland come out of Boland's office at night.

From the time the appellant entered Boland's home in 1911, their relations appear to have been exceedingly intimate. They are said by the appellee's witnesses to have occupied the same room, and the same bed, and to have conducted themselves as though they were man and wife, rather than master and servant. He referred to her as "Freda Boland," he gave her money and property, carried his own bank account in her name in trust for them both, paid her bills and loaned her jewelry, all in addition to paying her her regular wages.

Notwithstanding the separation, Mrs. Boland retained a keen interest in her husband and his affairs, which manifested itself in various ways. She had him arrested and prosecuted on a charge of adultery and also testified against him on a charge of receiving stolen goods knowing them to be stolen. He also blamed her for procuring an unprovoked assault on him by two men as a result of which he was severely injured, and he said she had herself threatened to shoot him a dozen times, and on one accasion came to his home in his absence and so conducted herself that he swore out a peace warrant against her.

Notwithstanding all this the plaintiff's witnesses testified that after the deed of separation her husband continued to visit her, often staying all night at her home, and had on numerous occasions, the latest of which was in 1919, had marital intercourse with her. That he on one occasion at Christmas sent her a card and one hundred dollars and that on these visits he treated her liberally and as in "old times." That he wanted to become reconciled to her but was prevented by his fear of the appellant who threatened to kill him if he went back to her. This testimony is emphatically denied by the defendant, but with the solution of that conflict this Court has nothing to do.

It was under these circumstances that the appellee first sued the appellant for alienating her husband's affections. That suit for some reason was not pressed, and a judgment of *non pros.* entered in it, and later this suit brought.

There are twenty-five exceptions, twenty-four of which relate to the rulings of the Court on questions of evidence, and one to its action on the prayers.

The plaintiff submitted eleven prayers, of which the Court granted the second, fourth and eleventh and refused the others, and the defendant submitted fifteen prayers, of which the third, fourth, eleventh and twelfth were granted and the rest refused. In addition to these prayers the Court prepared and granted an instruction of its own.

The defendant's first prayer directed a verdict for the defendant on the ground that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, and counsel for the appellant earnestly contended that this prayer should have been granted.

In dealing with the proposition presented by it there are two questions to be considered; first, whether there is any legally sufficient evidence tending to show the defendant did alienate the affections of John H. Boland from the appellee, and second, if there is legally sufficient evidence of such alienation, whether the deed of separation between John H. Boland and the appellant barred her right of action therefor.

In disposing of the first question the Court "assumes the truth of all the evidence before the jury tending to sustain the claim or defense as the case may be, and of all inferences of fact fairly deducible from it, and this though such evidence be contradicted in every particular by the opposing evidence in the case" *Malette* v. *British Ass. Co.,* 91 Md. 480, and when such a prayer is offered at the conclusion of the whole case all the evidence of both parties must be considered. *Consolidated Ry. Co.* v. *Pierce,* 89 Md. 504.

Assuming then the truth of all the evidence in the case tending to sustain the plaintiff's claim, it cannot be said there is no evidence in the case legally sufficient to warrant its submission to a jury. While it would serve no useful purpose to recapitulate the evidence at length, it may be said that there is testimony in the case, which if true, would show that Boland and the appellee lived together happily as husband and wife until some time in the year nineteen hundred and nine, when the husband left their home; that just before their separation the appellee saw her husband and the appellant coming out of a house of ill fame; that shortly after that he confronted her with a false affidavit to the effect that she had committed adultery with a man named Sapp, and that almost immediately thereafter he filed a suit for divorce

against her on that ground, which he failed to maintain; that during the pendency of that suit he was seen coming from a hotel and driving in an automobile with the appellant; and that at about that time he was also seen leaving his office with her at night; that in 1910 or 1911 Boland repeatedly had adulterous intercourse with the appellant; that she was trying to hide her relations with Boland, for about the same time, while in an automobile, she expressed a fear that if she left it she might be seen by the appellee; that as soon as Boland secured possession of his home, he installed the appellee there as his mistress; that they lived together there as husband and wife, and that she assumed, with his consent, his name; that he desired to return to his wife and resume marital relations with her, but was prevented by the threats of the appellant. This testimony, if true, together with such inferences as may legitimately be drawn from it, is sufficient to require the submission of the case to a jury.

In dealing with the second question involved in the consideration of this prayer, that is, whether the action was barred by the deed of separation, a question of law rather than fact is presented, and one too upon which the authorities are not in harmony.

It is stated that in actions on the case for alienation of affection "A separation agreement between husband and wife is no defense to an action for alienating the husband's affections," 21 *Cyc.* 1621, but it is also stated in the same volume, under the title "Criminal Conversation," where the spouses are living apart under articles of separation, the *consortium* being voluntarily relinquished, it has been held that the husband has no right of action," *Ibid.* 1628. Whilst there are differences in the two classes of actions, so far as the principle here involved is affected, there is no distinction sufficient to account for this conflict and it rests upon fundamental differences in the views of the different courts out of whose decisions it grows. Reason and the weight of author-

ity, in our opinion, support the principle that the fact that husband and wife are living apart, whether under articles of separation or not, is not a bar to an action for alienation of affections or criminal conversation, by either.

The contrary view seems to rest upon the decision in the old case of *Weedon* v. *Timbrell*, 5 T. R. 360, in which ASHHURST, J., said: "The gist of the action is the loss of the comfort and society of the plaintiff's wife. * * * Then taking that as the principle, it follows that if the plaintiff separate himself from his wife, he cannot be said to be deprived of that comfort and society, which he has before renounced." That case appears to have been followed in *Winter* v. *Henn*, 4 C. & P. 499; *Bartelot* v. *Hawker*, Peake's Cases, 11; and in *Hodge* v. *Windham*, Ibid, 53.

But in *Chambers* v. *Caulfield*, 6 East. 244, LORD ELLENBOROUGH, in speaking to the point whether the fact of a separation between husband and wife by deed was such an absolute renunciation of his marital rights as precluded the husband from maintaining an action for the seduction of his wife, said that he "did not consider that question concluded by the decision in *Weedon* v. *Timbrell*," and while in *Malcolmson* v. *Givens, Times*, February 27, 1873, the Judge Ordinary, on authority of *Weedon* v. *Timbrell*, dismissed a petition for damages by a husband who was separated from his wife, yet in the proceedings on *Malcolmson's Divorce Bill* in the House of Lords, LORD CHELMSFORD said, "their Lordships must not be assumed to assent to the doctrine that damages could not be recovered where adultery was committed while the husband and wife were living apart."

And in *Izard* v. *Izard & Leslie*, 14 P. D. 46, BUTTS, J., said: "Now as to the separation deed—It has been said that if a husband and wife have consented to live and do live separate and apart from one another, and the wife commits adultery, that deed is a bar to any recovery by the husband. If that ever has been said I think it is very wrong, * * * if a man

makes the acquaintance of another man's wife, engages her affections, is the cause of her separation from her husband, and then, after such separation, commits adultery with her, the husband is entitled to the same amount of damages as he would have been entitled to if no separation deed had been executed between them, and that even if no adultery had been committed before the separation."

And in the later case of *Evans* v. *Evans* (1899) P. D. 195, in which the husband and wife were living apart, on a petition of the husband for a dissolution of the marriage and the allowance of damages, the Court said: "It cannot be denied that there have been thrown out, at different times and in various cases, suggestions tending to show that where a husband and wife have become separated the husband cannot afterwards claim damages. That is not, however, the law. * * * But I think the authorities have been misunderstood, when it is argued that the mere separation of the husband and wife constitutes an answer to a claim for damages. * * * A man is wronged by the seduction of his wife far beyond the loss he sustains by the breaking up of his home. * * * It is a matter for consideration whether a man, whose wife has been seduced by another man, has not been subjected to intolerable insult and wrong; and the fact that he has already parted from his wife at the time when the adultery was committed does not render the blow to his honor less acute; does not render the position of his child or children less serious."

In the case of *Fry* v. *Derstler,* 2 Yeates, 278 (1798), in a *per curiam* opinion, on the authority of *Weedon* v. *Timbrell,* it was held that "where husband and wife live in a state of separation an action for criminal conversation cannot be maintained," but that decision is not in harmony with either the later English or American decisions, and does not appear to have been followed. In *Betser* v. *Betser,* 186 Ill. 537, the Court, in affirming a decision of the lower Court reported in 87 Ill. App. 399, said: "It is claimed that the plaintiff

is barred of her right of action in this case, even if otherwise entitled to maintain it, by a contract between her husband and herself entered into after the separation. That contract in no sense waived any right of action against the defendant for the loss here sued for." In *Metcalf* v. *Tiffany,* 106 Mich. 504, it was held that where by articles of separation the wife released the husband from any right to support her she could not recover damages for the loss of support from one causing the separation, but MONTGOMERY, J., in a concurring opinion, said: "What is said above has no reference to such damages as the plaintiff is entitled to for the loss of the society of her husband"; referring to and distinguishing the case from that of *Izard* v. *Izard, supra.*

Nor is there any sound reason why a husband or wife living apart under a deed of separation should for that reason be precluded from maintaining an action against a third person not a party to the deed who was the procuring cause of the separation, or who after the separation committed adultery with either. The marriage relations under such circumstances cannot be regarded as in any sense dissolved, and in the absence of its dissolution, the injury to the wronged spouse caused by the adultery is not confined to the mere loss of *consortium,* but includes other elements of injury. Such an agreement is necessarily revocable, and may be rescinded by the parties at any time. But any such possibility of reconciliation might be and likely would be entirely destroyed by the fact that the husband or wife, as the case might be, lived in adulterous intercourse with another.

For the reasons stated we are of the opinion that the deed of separation in this case is not a bar to the action, and there being evidence legally sufficient to support the plaintiff's claim, that the first prayer of the defendant was properly refused.

What has been said with reference to the defendant's first prayer also covers the defendant's fifth, sixth, seventh and

eighth prayers, which were properly refused. They were all predicated upon the hypothesis that by executing the deed of separation the appellee waived any right of action she may have had prior to that time against the appellant for alienating the affections of John H. Boland, the husband of the appellee. We do not think the deed had any such effect, and for that reason these prayers were properly refused. There were other objections to the prayers, but as they were properly refused on the grounds stated, the others need not be discussed.

The defendant's ninth, fourteenth and fifteenth prayers were too indefinite and vague to be of any value as a guide to the jury in reaching a verdict upon the issues in the case, and were likely to mislead them, and there was no error in their refusal. Nor was there error in the refusal of the defendant's second prayer. It asked the Court to say as a matter of law that the appellant was not the cause of the original separation between Mr. and Mrs. Boland. Obviously the Court could not so rule if there were in the case any evidence legally sufficient to show that she did cause such separation. For reasons already stated, we are of the opinion that there was such evidence and the prayer therefore should have been refused.

The defendant's tenth prayer was properly refused, its meaning is obscure, and it is misleading. The jury are told in it that in considering their verdict "they may take into consideration any unhappy relations between the plaintiff and her husband not caused by the conduct of the defndant," but they are not told how such finding is to affect their deliberations or influence their opinions, nor whether the fact found is to be considered in bar of the action or in mitigation of damages.

There was no reversible error in the rejection of the defendant's thirteenth prayer. It is true that the Court in *Callis* v. *Merriweather*, 98 Md. 361, referred to a similar

prayer, but the correctness of that prayer was not before the Court in that case for consideration. It was granted at the instance of the appellant, and the Court said that it and other granted prayers submitted the case to the jury as favorably to the appellant as he could ask. The gist of an action for alienation of affection is not the separation of the parties, but the loss of affection. It is true that a separation often and perhaps usually results, but that is only an incident of the thing complained of and does not itself constitute the cause of action. 21 *Cyc.* 1617. In this case the appellee complained not only that the appellant had separated her from her husband, John H. Boland, but that she had alienated his affections, and it would have been improper to have precluded the jury from considering that element of the case.

This brings to a consideration of the granted prayers. The Court granted three of the plaintiff's prayers and one which it prepared itself. For reasons already given we do not think the instruction prepared by the Court correctly states the law, but as it states the law more favorably to the appellant than was warranted he was not injured by the error.

By the plaintiff's fourth prayer, which the Court granted, the jury were told that if they found "any misconduct on the part of the wife, then such misconduct is no bar to this action." But it might well have been in bar of the action and the instruction was too broad. It might well have been, that the plaintiff's own misconduct was the actual and procuring cause of the loss of her husband's affections, and that in consequence the appellant could not have been the cause of such loss, because she could not destroy what had already been destroyed. And yet under that prayer the jury, although they may have believed that the appellee's own misconduct was the actual cause of the estrangement between her and her husband and that the appellant had nothing to do with it, nevertheless were not allowed to consider those facts as a possible bar to the action. If in fact the alienation

and the separation were occasioned by the misconduct of the appellee, and not by any act of the appellant, manifestly the latter was not responsible, and it was error to instruct the jury otherwise. *Wolf* v. *Frank,* 92 Md. 146.

We have found no error in the action of the Court upon the plaintiff's second and eleventh prayers, which were granted.

We will now consider the rulings of the Court on the evidence. A witness for the plaintiff was asked on cross-examination the question "What was it you stole?" There was no testimony in the case that he had stolen anything. He had testified that he had been in jail, had been indicted and pleaded guilty, and when asked why he was in jail he said "for getting in bad company." That was not a confession of larceny and the question, because it assumed a material fact had been proved when it had not, was bad. The Court refused to allow it and in this ruling, which is the subject of the first exception, we find no error. *Jones on Evidence,* 843. Nor was there error in refusing the testimony in the second exception. The witness, John Boland, Jr., was asked if he had not within the preceding month or two written his father asking for money and concluded his appeal with the statement "and this is no game." It is difficult to see what this testimony had to do with the case, or how it could affect the credibility of the witness, or in what way the appellant was injured by its exclusion.

The fifth exception relates to the action of the Court in refusing to permit the same witness to be asked on cross-examination if he did not live at his mother's home with the woman he married, before he married her. Such testimony was entirely collateral to any issue in the case and did not bear in any way on the credibility of the witness, and its only possible purpose was to degrade and humiliate him, and for that purpose it was inadmissible, *Avery* v. *State,* 121 Md. 236, and the question was properly refused. The same witness was later asked if his father had not sworn out a

peace warrant against his mother. The Court very properly refused to permit this question and its ruling is the subject of the sixth exception. Even if the fact sought to be proved were relevant, that was not the way in which to prove it.

We are of the opinion however that the Court erred in not allowing the questions in the seventh and eighth exceptions. In the seventh exception the witness was asked on cross-examination "have you ever been convicted of any crime"? The Court refused to permit the question to be asked. It has been repeatedly held that in this State a witness may be asked if he has not been convicted of crime. Such testimony is admissible on the ground that the credibility of the witness is in issue, and that anything which will throw any light on his character in respect to it is admissible. *McLaughlin* v. *Mencke,* 80 Md. 88. In the eighth exception Mrs. Boland was asked on cross-examination, referring to a hearing in a divorce proceeding between her and her husband, "Didn't you produce a woman at that hearing by the name of Lilian Pugh as the woman who had had relations with your husband?" The Court refused to allow this question to be asked. The witness had already testified that the appellant had before the suit for divorce had improper relations with appellee's husband, and that the separation between her and her husband was caused by the appellant. If at the time she filed her bill for divorce, she alleged as a ground for it the misconduct of her husband with a woman other than appellant, and did not mention the appellant, and actually produced the other woman to prove the fact, it would have had a direct bearing on the value of her testimony, and it was for that reason admissible. It was also admissible as a fact to be considered by the jury in mitigation of damages. *Wolf* v. *Frank,* 92 Md. 145.

There was also error in excluding the testimony in the 9th and 10th exceptions. In the ninth exception the appellee was asked if her husband in a bill for divorce had not accused her of having committed adultery, and in the tenth bill

she was asked if he had not shown her an affidavit by a man named Sapp, charging her with adultery with the affiant. This testimony should have been allowed, not as evidence of the truth of the statements, but as reflecting on the relations between appellee and her husband at the time. *Hillers* v. *Taylor,* 116 Md. 170.

There was no error in the ruling of the Court on the testimony in the eleventh exception.

The twelfth, fifteenth, sixteenth, seventeenth and eighteenth exceptions may be considered together. Passing over for the time the form of the several questions, the exceptions raise the question whether the pleadings and decree and opinion in a suit for divorce between the appellee and her husband are admissible as evidence in this case. Boland, in July, 1909, filed a bill for divorce on the ground of adultery against his wife. She filed in the same proceeding a cross-bill for divorce against him also on the ground of adultery. The Court dismissed the original bill and granted the appellee a divorce on her cross-bill. This decree was in turn stricken out and both bills dismissed on the ground that the first decree was procured by fraud. The adultery with which Boland was charged was not with the appellant. The fact that Boland and his wife at or about the time the appellant is said to have alienated his affections made these charges and instituted these proceedings against each other was relevant as tending to show the state of their feeling for each other, not as a bar to the action but as affecting the question of damages, and for that reason the testimony was proper and should have been admitted if offered in proper form. *Wolf* v. *Frank, supra; Hillers* v. *Taylor, supra.* The questions embraced in the fifteenth and sixteenth exceptions were properly refused for the reason that the contents of a judicial record cannot be proved by parol, but there was error in the rulings of the Court in the twelfth, seventeenth and eighteenth exceptions, and the testimony referred to in them should have been admitted.

In the twenty-first exception the appellant offered in evidence the testimony given in the divorce proceeding of *Boland* v. *Boland* by Pearl Ohle. The general rule is that testimony given in one proceeding cannot be used in another unless the witness giving it is dead and the parties and questions in issue are substantially the same. Here the issues are not the same, the parties are not the same, and it did not appear that the attendance of the witness could not have been secured. For any one of these reasons the testimony was properly refused.

The twenty-second exception relates to the action of the Court in overruling an offer of a decree in the divorce proceeding, and a subsequent opinion and decree passed therein. For reasons already given we are of the opinion that this testimony should have been admitted and that there was error in its exclusion.

The nineteenth exception relates to the refusal of the Court to permit a witness to prove the contents of a magistrate's warrant by parol. We find no error in this ruling.

In the twentieth exception the Court overruled an offer on the part of the appellant to prove that the appellee had "brought and prosecuted an indictment against Boland; that she had gone to New York with one Pearl Ohle and two counsel in her case, and had there lived at the Hotel Marlborough in adultery, and that this matter was brought before JUDGE STOCKBRIDGE who struck out the decree of divorce previously granted to her. This testimony should have been admitted not as a bar to the action but in mitigation of damages. The rulings embraced in the twenty-third and twenty-fourth exceptions were within the discretion of the Court and need not be considered. We have found no error in the other rulings involved in the appeal.

For the reasons given the judgment must be reversed and a new trial awarded.

The appellant in her brief calls attention to certain objections to the form of the bill of exceptions. Whilst we are

not to be understood as prescribing the form in which the testimony in bills of exception shall be set out, it is sufficient to say that in the preparation of the exceptions in this record both the letter and the spirit of Rule 5 of this Court have been disregarded. An examination of the record reveals that in addition to the testimony and rulings of the Court there is a mass of extrinsic and irrelevant matter quite foreign to any question presented by the appeal. As the responsibility for this condition must be charged to the appellant, the costs of this appeal will be divided equally between the parties.

> *Judgment reversed and the case remanded for a new trial, each side to pay one-half the costs of this appeal.*