DI BLASIO *v.* KOLODNER ET AL.

[No. 116, September Term, 1963.]

*Decided February 11, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*David Kimmelman,* with whom was *William O. Goldstein* on the brief, for the appellant.

*David L. Bowers,* with whom was *S. Herbert Harris* on the brief, for the appellee Fred Kolodner.

*M. King Hill, Jr.,* with whom were *Smith, Somerville & Case* on the brief, for the appellee Frank M. Rezek.

BRUNE, C. J., delivered the opinion of the Court.

In this suit for libel, the plaintiff, Di Blasio, appeals from separate judgments of the Circuit Court for Baltimore County in favor of the defendants, Kolodner and Rezek. The alleged libel was contained in a declaration filed in a prior suit (sometimes referred to below as the "original suit" or the "criminal conversation" or "crim. con." suit) brought by Rezek, through his attorney, Kolodner, against Di Blasio. Both judgments in the libel suit were based upon the privileged character of the publication—that in favor of Kolodner, the attorney, being entered after his demurrer had been sustained, and that in favor of Rezek, the client, being entered upon his motion for summary judgment. The pleadings in the original suit have been incorporated in the record in this case, and a brief statement with regard to that suit is necessary to the consideration of the instant case.

The original suit by Rezek against Di Blasio, filed on July 27, 1961, contained three counts. Each of them contained an allegation that the defendant, Di Blasio, debauched and carnally knew the wife of Rezek, the plaintiff, and caused her to become pregnant. The first count was limited to such an allegation. The second count alleged Di Blasio's debauching and carnal knowledge of Rezek's wife with intent to injure Rezek and to deprive him of the society and assistance of his wife and to alienate and destroy her affection for him, that such results had followed, and that Di Blasio had caused Rezek's wife to become pregnant. The third count alleged that by "wrongful and wicked enticements, allurements and persuasions" Di Blasio had alienated the affections of Rezek's wife, that he had "wrongfully and maliciously" induced her to abandon Rezek's home for short periods of time, and that she was pregnant as a result of Di Blasio's debauching and carnally knowing her.

The defendant in the original suit (Di Blasio) first filed the general issue plea in September, 1961, and on December 29, 1961, he filed a motion for summary judgment. The grounds therefor here pertinent were in substance that the declaration on its face showed the suit to be for alienation of affections, that such a cause of action had been abolished by Art. 75 C of the Code,[1] and that the declaration was in violation of that Article. Rezek's answer to this motion was to the effect that the declaration stated a cause of action for criminal conversation and that such cause of action had not been abolished. Judge Menchine, of the Circuit Court, held that the torts of alienation of affections and of criminal conversation were separate wrongs and that a cause of action for the latter had not been abolished. He noted, however, that the declaration was "replete with language alleging alienation of affections, subject

---

1. The present Art. 75 C of the Code, the 1957 Edition, as amended by Ch. 62 of the Acts of 1962, is derived mainly from Ch. 1010 of the Acts of 1945. Sec. 7 of the 1957 Ed. was derived from Ch. 42 of the Acts of 1952 and its subject was unrelated to Ch. 1010 of the Acts of 1945. Ch. 62 of the Acts of 1962 transferred that section to another Article. Two sections not relevant to this suit were added by Chs. 826 and 829, respectively, of the Acts of 1963.

516

matter now forbidden as a cause of action, which allegations are unnecessary, impertinent, scandalous, irrelevant and improper within the meaning of Rule 301 (i)." Pursuant to that Rule, the court on its own initiative ordered the plaintiff, Rezek, to file an amended declaration limited specifically to criminal conversation. This Rezek proceeded to do on May 24, 1962. He filed a second amended declaration on September 5, 1962, after a demurrer to the first amended declaration had been sustained (apparently on a ground not here important). Without reviewing in detail the subsequent pleadings, we note that a motion to dismiss filed by Di Blasio on October 4, 1962, was overruled by Judge Lindsay on October 18, 1962. At the time when this case came to us the original suit was still open on Rezek's claim for criminal conversation.

In the instant suit for libel which is based upon allegations contained in the original declaration filed in the criminal conversation case, the issue which we regard as controlling, as did Judge Menchine, is that of privilege. There were other issues in the trial court, and one of them—whether the suit is premature—is also sought to be raised here by the appellees. We find it unnecessary to pass upon any of those other issues. We shall assume, as did the trial court, that all of the allegations complained of were libelous, and we shall assume without deciding (the trial court so held) that this suit is not premature. No question of limitations is raised on appeal, and therefore none is before us. (Rezek did originally raise such a question in the trial court; Kolodner did not.) Likewise, no challenge to the validity of the statute is here involved and we express no opinion with regard thereto. Cf. the similar comment in *Babb v. Bolyard,* 194 Md. 603, at 608, 72 A. 2d 13, a case which did not involve this statute and which seems to be the only prior case in this Court to mention it. For the purposes of this case, we shall assume its validity.[2]

Because it is the most sweeping, we shall consider first the

2. See Prosser, *Torts* (2nd Ed.), § 103, p. 697, and cases cited in n. 92; annotations, 158 A.L.R. 617, and 167 A.L.R. 235, and cases therein collected, on the validity of such statutes. *Albert v. McGrath,* 278 F. 2d 16 (C.A., D.C. Circ.) held the Maryland statute inapplicable, but did not consider its validity.

appellant's contention that actions for criminal conversation as well as for breach of promise have been abolished by Ch. 1010 of the Acts of 1945, now incorporated in Art. 75 C of the Code, 1957 Ed., as now amended. These are §§ 1-6 and §§ 8-9, both inclusive (see note 1, *supra*), and they are collectively referred to herein as Art. 75 C. Section 1 of that Article recites abuses to which remedies for breach of promise to marry and for alienation of affections have been subjected, state that they have in many cases resulted in a perpetration of fraud, and declares "as the public policy of the State that the best interests of the people of the State will be served by the abolition of such remedies."

§§ 2, 4 and 5 of Art. 75 C provide as follows:

(§ 2) "The rights of action heretofore existing to recover sums of money as damages for breach of promise to marry, excepting in cases where pregnancy exists, and for the alienation of affections are hereby abolished."

(§ 4) "No act hereafter done within this State shall operate to give rise, either within or without this State, to any of the rights of action abolished by this article."

(§ 5) "It shall hereafter be unlawful for any person, either as a party or attorney, * * * to file or serve, [or] cause to be filed or served * * * any process or pleading, in any court of the State, setting forth or seeking to recover a sum of money upon any cause of action abolished or barred by this article, * * *."

§ 8 of the same Article makes a violation of any provision of the Article a misdemeanor subject to a fine of $1,000 to $5,000, or imprisonment of one to five years, or both. § 9 directs that the Article "shall be liberally construed to effectuate the objects and purposes thereof and the public policy of the State as hereby declared." Then follows a separability clause.

Alienation of affections and criminal conversation are two different torts, though they may often be rather closely related. Restatement, *Torts,* Vol. 3, §§ 683, 685; *Callis v. Merriewea-*

ther, 98 Md. 361, 57 A. 201; *Hillers v. Taylor,* 108 Md. 148, 69 A. 715 (close relationship as to damages) ; *Annarina v. Boland,* 136 Md. 365, 111 A. 84; *Tinker v. Colwell,* 193 U. S. 473; *Antonelli v. Xenakis,* 363 Pa. 375, 69 A. 2d 102. Cf. Prosser, *Torts* (2nd Ed.), § 103, p. 686, where the author argues that although actions for criminal conversation, enticement and alienation of affections are often treated as separate torts they should not be, and notes some tendency to confuse the three and lump them together. He observes that in an action for criminal conversation, proof of enticement or of alienation of affections will go to increase the damages, and that the converse also is true.

The New York statute, urged upon us by the appellant, in terms abolishes causes of action for alienation of affections, criminal conversation, seduction and breach of contract to marry. Its inclusiveness is obviously greater than that of our statute. The Pennsylvania statute (Purdon's Pa. St. Ann., title 48, § 170, Cum. Supp., 1962, et seq.) is much closer to ours. It abolishes, with certain exceptions, causes of action for alienation of affections and says nothing about causes of action for criminal conversation. In construing this statute the Supreme Court of Pennsylvania held that causes of action for criminal conversation were not thereby abolished. *Antonelli v. Xenakis, supra.* This case has been followed in *Baldridge v. Matthews,* 378 Pa. 566, 106 A. 2d 809, and in *Karchner v. Mumie,* 398 Pa. 13, 156 A. 2d 537. For other cases reaching similar conclusions, see Prosser, *Torts* (2nd Ed.), § 103, p. 698 and cases cited in note 95.

The appellant seeks to distinguish the *Antonelli* case on several grounds, two of which are manifestly incorrect and others of which are not persuasive. Contrary to his assertions, the Pennsylvania statute does contain a "liberal construction" clause (§ 177) very similar to ours, and it does contain penal provisions. He is correct in saying that the Pennsylvania statute does not have a declaration of public policy such as ours does (and as the New York statute does), but our public policy is declared only as to the causes of action mentioned, and the public policy to be served is, we think, implicit in the Pennsylvania Act. The appellant is also correct in stating that Pennsylvania does have

a statute (Purdon's Pa. St. Ann., title 46, § 558) providing that statutes decreasing the jurisdiction of a court of record are to be strictly construed. He does not point out that this is one of several provisions for strict construction included in the same section which abolished the rule for the construction of statutes thereafter enacted that statutes in derogation of the common law are to be strictly construed. That rule still prevails in Maryland. *City of Baltimore v. Baltimore Gas & Electric Co.*, 232 Md. 123, 135, 192 A. 2d 87.

It is, of course, obvious that the statute here involved is in derogation of common law rights, and it is also evident that it was intended to be remedial in barring two kinds of suits that had often been used as instruments of fraud. On the language of the statutory provisions here involved, we think that it makes no difference in the result whether this statute is construed primarily as one in derogation of the common law or primarily as one remedial in character. As we have already said, the terms of the statute do not apply to actions for criminal conversation.

We find no reason for holding that the General Assembly did not mean exactly what it said—no more and no less—with regard to the kinds of causes of action which it undertook to abolish. It will be observed that even as to one of such causes of action which it did undertake to abolish generally—breach of promise to marry—it carefully made an exception "in cases wherein pregnancy exists." Our Art. 75 C says nothing whatever about causes of action for criminal conversation, and we think that they are not abolished by it. See *Antonelli v. Xenakis, supra*. Our reading of Art. 75 C as covering only the two causes of action specifically mentioned in it is in accord with Judge Markell's description of its scope in *Babb v. Bolyard, supra*.

We cannot read into § 9 of Art. 75 C, which provides for liberal construction to effectuate the objects and purposes of the Article and the public policy of the State thereby declared, any broadening of the statute so as to make it operative beyond the field which it undertakes to cover. See *Franklin v. Franklin*, 1 Md. Ch. 342, 344, holding that remedial statutes are "to be

construed liberally to advance the remedy and obviate the mischief," but are "not to be so expanded as to comprehend cases altogether beyond their purview;" and *Crowner v. Baltimore United Butchers Ass'n.,* 226 Md. 606, 175 A. 2d 7, involving the Workmen's Compensation Act. § 63 of that Act (Art. 101 of the Code (1957)) provides: "The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article; but this article shall be so interpreted and construed as to effectuate its general purpose." The appellant there urged that in keeping with the social purpose of the Compensation law, which is remedial in character, the construction given to the language of the statute should be in favor of the claimant. In rejecting this contention, we stated the provisions of § 63 and said: "This does not require a disregard of the clear meaning of the Act so as to favor any one group." (226 Md. at 610.) It may be observed that the first clause of § 63 has no counterpart in the terms of Art. 75 C, and that the second clause is generally similar to the liberal construction provision of § 9 of Art. 75 C.

Our conclusion that actions for criminal conversation are still maintainable in this State derives some further support from the recognition of such actions in our present Maryland Rule 325 d, which exempts from the operation of Rule 325 (dealing with payment into court) several kinds of actions, among them "prosecution for criminal conversation." Rule 325 d was adopted substantially in its present form in 1956 to take effect January 1, 1957. (It superseded § 24 of Art. 75 of the 1951 Code, which found its origin in § 94 of Ch. 112 of the Acts of 1856 and was repealed by Ch. 399 of the Acts of 1957.)

Since a right of action for criminal conversation was a recognized right under the common law, and since it was not abolished by Art. 75 C, it follows that the Circuit Court had jurisdiction to entertain the criminal conversation suit. That being so, the requirement for invoking privilege for matter written or spoken in judicial proceedings that the court have jurisdiction over the case is met. The question is then narrowed down to whether the language complained of is within the privilege. In the light of *Kennedy v. Cannon,* 229 Md. 92, 182 A.

2d 54, no extended review of the authorities seems necessary here.

The principal contention raised by the appellant on this phase of the case is that a qualified privilege may not be set up successfully by demurrer or on motion for summary judgment. Though it is the general rule that a qualified privilege may not be taken advantage of by demurrer (*Walker v. D'-Alesandro*, 212 Md. 163, 129 A. 2d 148; *Pollitt v. Brush Moore Newspapers*, 214 Md. 570, 136 A. 2d 573; *Thompson v. Upton*, 218 Md. 433, 146 A. 2d 880), and though the trial court characterized the defense as one of qualified privilege, we do not think that rule applicable, nor do we think that the trial court intended to depart from the views we expressed in *Kennedy v. Cannon, supra*. On the contrary, we think that the result which he reached and the actual basis therefor was in accord with those views.

*Kennedy v. Cannon, supra*, actually involved a statement made in connection with but outside of a judicial proceeding, and it was held not to be privileged. However, Judge Sybert, speaking for the Court, went into a careful examination of authorities bearing on the nature of the privilege for words spoken or written in judicial proceedings and the purpose underlying the protection afforded by the privilege even though malice be present. After referring to *Maulsby v. Reifsnider*, 69 Md. 143, 14 A. 505, and quoting an extensive passage from that case (69 Md. at 151) including a statement that "this privilege is not an absolute and unqualified privilege," Judge Sybert continued (229 Md. at 96): "The Court went on to hold that the words, to be privileged, must also be relevant to the judicial proceeding in which they were spoken." In the *Maulsby* case, the court, in Judge Robinson's majority opinion, expressed a preference for the use of such terms as "having reference" or "made with reference" or "having relation to the cause or subject matter" (69 Md. at 162) rather than the word "relevant" or "pertinent"; and where we use the term "relevant" in this opinion, we use it as including the terms regarded as preferable in the *Maulsby* case. In that case, a majority of this Court upheld a judgment for the defendant lawyer rendered upon a directed verdict on the ground that, since "the words * *

were spoken by the defendant as counsel, and had reference to the subject-matter then before the court, this action cannot be maintained." Judge McSherry concurred in the result on the ground that the privilege of counsel was absolute. Judge Stone also concurred in the result. He found it unnecessary to decide whether the privilege was absolute or qualified, but was inclined to agree with Judge McSherry on that question.

After stating the holding of *Maulsby* that, to be privileged, words spoken in a judicial proceeding, must be relevant thereto, Judge Sybert set forth the law which we think is controlling here as follows: "The statement just quoted reflects the view of a majority of the jurisdictions in this country, although the semantics in this area of tort law have changed somewhat since the date of the *Maulsby* case. What was characterized in that case as a qualified privilege for communications, conditioned on their being pertinent or relevant to a judicial proceeding, without regard to the motive of the speaker, is referred to by modern text writers and in case law as an absolute privilege. See, for example, *Brush-Moore Newsp. v. Pollitt*, 220 Md. 132, 137, 151 A. 2d 530 (1959) ; *Sanders v. Leeson Air Conditioning Corporation*, 108 N. W. 2d 761 (Mich. 1961) ; *Ramstead v. Morgan*, 347 P. 2d 594 (Ore. 1959) ; *Bailey v. McGill*, 100 S. E. 2d 860 (N.C. 1957) ; Prosser, *Torts* (2nd ed.), pp. 606, *et seq.;* 69 Harv. L. Rev. 875, 920. This absolute immunity extends to the judge as well as to witnesses and parties to the litigation, for defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case. 1 *Harper & James, The Law of Torts,* § 5.22, and cases there cited. An absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused. *Carr v. Watkins,* 227 Md. 578, 177 A. 2d 841 (1962)." Cf. *Eliason v. Funk,* 233 Md. 351, 196 A. 2d 887.

To the authority cited above in support of the rule that the privilege is available to parties as well as to counsel, we may add: *Bartlett v. Christhilf,* 69 Md. 219, 14 A. 518; and *Gore v. Condon,* 87 Md. 368, 377, 39 A. 1042.

Whether the allegations here complained of were relevant or had reference to the claim for criminal conversation was a proper matter for determination by the court. *Maulsby v. Reifsnider, supra; Bartlett v. Christhilf, supra.* Here the allegations were all contained in the declaration in the criminal conversation suit, which was before the court. The authorities which we have referred to earlier in this opinion in considering whether causes of action for criminal conversation have or have not been abolished make clear the close relationship between alienation of affections and criminal conversation. Indeed, the appellant's argument is that the connection is so close that the abolition of the one carried with it the abolition of the other. That the allegations of alienation of affections were ordered to be deleted does not destroy that relationship and hence does not destroy the privilege. See *Johnston v. Schlarb,* 7 Wash. 2d 528, 110 P. 2d 190, 134 A.L.R. 483; *McCartney v. Schierenbeck,* 200 Misc. 549, 107 N. Y. S. 2d 973; annotation, 134 A.L.R. 483.

The appellant urges that to uphold the privilege here would circumvent the legislative purpose embodied in Art. 75 C. We note, however, that the Legislature itself has provided sanctions for violation of the statute, which it apparently deemed sufficient and which do not include abolition of the privilege. If the Legislature desires to remove the privilege, it can easily amend the statute.

It could hardly be contended in the face of our holding that an action for criminal conversation is maintainable, that allegations of that charge are not privileged. It would seem a somewhat incongruous result to hold that the appellees are nevertheless liable for the less serious allegations of alienation of affections, the libelous character of which we have assumed but not determined.

We think that in this instance, the facts required to bring the privilege into operation were apparent from the pleadings before the trial court, that when so brought into operation it was an absolute privilege which was not dependent upon the question of the existence or non-existence of malice, and that the judgments in favor of each of the appellees should be affirmed.

*Judgments affirmed; the appellant to pay the costs.*