FLOYD R. KLINE *v.* DONALD S. ANSELL

[No. 96, September Term, 1979.]

*Decided May 26, 1980.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*Omer T. Kaylor, Jr.,* and *William C. Wantz,* with whom were *Kaylor, Wantz & Douglas* on the brief, for appellant.

*George E. Snyder, Jr.,* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

We shall here consider the question whether the common law cause of action for criminal conversation is viable in Maryland.

On 1 September 1978, in the Circuit Court for Washington County, the appellee, Donald S. Ansell (husband), filed a two count declaration against the appellant, Floyd R. Kline (paramour), for damages for criminal conversation (count one) and assault (count two). On 16 February 1979, the trial court directed a verdict against the paramour on the criminal conversation count. The jury found that the paramour had committed an assault upon the husband. It awarded $40,000 compensatory damages and $4,250 punitive damages on the criminal conversation count, and $6,000 compensatory damages and $4,000 punitive damages on the assault count. The paramour filed an appeal in the Court of Special Appeals and a petition for a writ of certiorari in this Court. We granted the petition before consideration by the Court of Special Appeals.

At common law, the cause of action for criminal conversation was available only to a man. III Blackstone, *Commentaries on the Laws of England,* 139-40 (Lewis's ed.

1898). The gravamen of this action was adultery. Its elements consisted of a valid marriage and an act of sexual intercourse between a married woman and a man other than her husband. *Tinker v. Colwell,* 193 U.S. 473, 481, 24 S. Ct. 505, 506 (1904); *Geelhoed v. Jensen,* 277 Md. 220, 222, 224, 352 A.2d 818, 820 (1976); *Woodman v. Goodrich,* 234 Wis. 565, 567, 291 N.W. 768, 769 (1940). The fact that the wife consented, that she was the aggressor, that she represented herself as single, that she was mistreated or neglected by her husband, that she and her husband were separated through no fault of her own, or that her husband was impotent, were not valid defenses. *See* Prosser, *The Law of Torts,* § 124 (4th ed. 1971). The only valid defense to this action was the consent of the husband. *See Kohlhoss v. Mobley,* 102 Md. 199, 206, 62 A. 236, 236 (1905).

The cause of action for criminal conversation evolved from the action for enticing away a servant and depriving a master of his proprietary interest in the servant's services. Because at common law the status of a wife was that of a servant, that action was extended to include the deprivation of the wife's services. Prosser, § 124 at 873. The husband was regarded as having a property right in the body of his wife and an exclusive right to the personal enjoyment of her. The wife's adultery was therefore considered to be an invasion of the husband's property rights. A husband could maintain an action for criminal conversation even if his wife was a willing participant, because, under the common law, she was considered incapable of giving her consent to what was regarded as an injury to her husband.

While the action for criminal conversation was founded on the services which the wife owed to her husband, the underlying basis of recovery was the injury to the husband's feelings and particularly to his sense of his own and his family's honor. Many of the early cases held "that the essential injury to the husband consists in the defilement of the marriage bed, in the invasion of his exclusive right to marital intercourse with his wife and to beget his own children." *Tinker,* 193 U.S. at 484, 24 S. Ct. at 507. This right was recognized as "a right of the highest kind, upon the

thorough maintenance of which the whole social order rests, and . . . [for the purpose of] the maintenance of the action it may properly be described as a property right." *Tinker*, 193 U.S. at 484, 24 S. Ct. at 507. Thus, while these cases recognized that the essence of the action was an injury to the husband's personal feelings arising from an interference with the marital relationship, they nonetheless continued to describe the basis of the action as an interference with a property right.

Over the years, there has been a gradual shift of emphasis away from the concepts of services and property rights toward a recognition of the more intangible elements of the marital relationship, such as companionship and affection. Prosser, § 124 at 873. Greater emphasis is now placed upon the concept that the wife's act of adultery is an injury to the feelings and the marital rights of the husband, and is therefore an invasion of his personal rights. *Tinker*, 193 U.S. at 184, 24 S. Ct. at 508; *Geelhoed*, 277 Md. at 233, 352 A.2d at 826. Thus, an interference with the continuance of the personal rights associated with the marital relationship is becoming recognized as a basis for this action.

In more recent years, the action for criminal conversation has come under attack. In some jurisdictions, it has been abolished by the Legislature.[1] In others, it has been abolished by the courts. *Bearbower v. Merry,* 266 N.W.2d 128, 135 (Iowa 1978); *Fagden v. Lenker,* 469 Pa. 272, 282, 365 A.2d 147, 152 (1976). A variety of rationales have been relied upon to justify this result. The action for criminal conversation is notorious for affording a fertile field for blackmail and extortion because it involves an accusation of sexual misbehavior. Criminal conversation actions may frequently be brought, not for the purpose of preserving the

---

1. *See, e.g.,* Ala. Code tit. 6, § 6-5-331 (1977); Cal. Civ. Code § 43.5 (West 1954); Colo. Rev. Stat. § 13-20-202 (1973); Conn. Gen. Stat. § 52-572f (West Supp. 1979); Del. Code tit. 10, § 3924 (1974); Fla. Stat. § 771.01-08 (1979); Ind. Code Ann. § 34-4-4-1 (Burns Supp. 1978); Mich. Comp. Laws § 600.2901 (1970); Minn. Stat. Ann. § 553.02 (West Supp. 1979); N.J. Stat. Ann. § 2A:23-1 (West 1952); N.Y. Civ. Rights Law § 80-A (McKinney 1976); Or. Rev. Stat. §§ 30.840, 30.850 (1977); Va. Code § 8.01-220 (1977); Wis. Stat. Ann. § 248.01 (West Supp. 1978-79); Wyo. Stat. § 1-23-101 (1977).

marital relationship, but rather for purely mercenary or vindictive motives. An award of damages does not constitute an effective deterrent to the act of adultery, and it does not effectively help to preserve or restore a marital relationship in which adultery has already occurred.[2] Indeed, a contested trial may destroy a chance to restore a· meaningful relationship. In addition, this action, which eliminates all defenses except the husband's consent and which imposes liability without any regard to the quality of the marital relationship, is incompatible with today's sense of fairness. Most important, today's sense of the increasing personal and sexual freedom of women is incompatible with the rationale underlying this action. For all of these reasons, this harsh cause of action has been considered to be unreasonable and anachronistic. *See generally* Prosser, § 124; Clark, *The Law of Domestic Relations,* § 10.2 (1968).

In Maryland, as elsewhere, the common law may be

---

2. A particularly eloquent expression of this rationale is found in Bearbower v. Merry, 266 N.W.2d at 138. There, Justice McCormick, dissenting in part, said:

"The disintegration of a marriage is ordinarily as complex a process as is its integration. It seldom occurs overnight. It starts from within. It is not caused by only one factor or through some imperfection of only one of the spouses. Any third person who kicks at the cornerstone of a shaky marriage will not bring it down without active support from one or both of the parties. It is simplistic and unrealistic to suppose the edifice will be held together either so long as or because spouses have the right to obtain vengeance in the form of damage suits against the third person. Although a recovery of damages will punish the third person and sooth the ego while enriching the purse of the plaintiff, it is hardly calculated to be a constructive influence in maintaining or restoring a mature and stable marriage between two individuals with free will and separate identity.

"An early reaction to marital failure is the tendency to place all the responsibility for it on someone else. This is a process of self-defense. The fault divorce system provided a mechanism for playing out this fantasy, and the alienation of affections and criminal conversation torts serve the same purpose.

. . .

"Heart-balm actions arise from the same motives and serve no nobler purpose than the stoning of the adulteress condemned in the New Testament or the affixing of the scarlet letter decried by Hawthorne, and they have no more to do with protecting marriage and the family than either of those events."

changed by legislative act.[3] It may also be changed by judicial decision if this Court is convinced that it has become unsound in the circumstances of modern life. *Lewis v. State,* 285 Md. 705, 715, 404 A.2d 1073, 1078 (1979); *Pope v. State,* 284 Md. 309, 341-42, 396 A.2d 1054, 1072-73 (1979); *White v. King,* 244 Md. 348, 354, 223 A.2d 763, 767 (1966). An examination of the judicial and legislative history of this cause of action in Maryland shows that in 1945 the Legislature enacted chapter 1010, Laws of Maryland 1945, which abolished, among other things, the cause of action for alienation of affections. That action, which arose when a person induced a married woman to leave her husband or otherwise interfered with the marital relationship, even though no act of adultery was committed, was recognized long ago as separate and distinct from the action for criminal conversation. *See Annarina v. Boland,* 136 Md. 365, 374, 111 A. 84, 87 (1920); *Callis v. Merrieweather,* 98 Md. 361, 363, 365, 57 A. 201, 201, 202 (1904). In 1964, this Court held that the Legislature, assumably aware of our decisions, *Supervisor of Assessments of Anne Arundel County v. Southgate Harbor,* 279 Md. 586, 591-92, 369 A.2d 1053, 1056 (1977); *Herbert v. Gray,* 38 Md. 529, 532 (1873), did not abolish the separate and distinct action for criminal conversation when it abolished the action for alienation of affections. *DiBlasio v. Kolodner,* 233 Md. 512, 520, 197 A.2d 245, 249 (1964). In 1976, this Court recognized that the husband's action for criminal conversation was related to the State's special interest in the domestic relations of its citizens and, remained viable. *Geelhoed,* 277 Md. at 233, 352 A.2d at 826. As recently as 1977, the Legislature, again assumably aware of our decisions, rejected House Bill 170 which expressly provided that the action for criminal conversation be abolished. *Journal of Proceedings of the Senate of Maryland, Regular Session 1977,* pp. 3034, 3514; *Journal of Proceedings of the House of Delegates of Maryland, Regular Session 1977,* pp. 162, 2397, 2904.

---

3. Md. Decl. of Rights, art. 5, provides in pertinent part:

"That the Inhabitants of Maryland are entitled to the Common Law of England ... subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State."

Were the interrelated judicial and legislative history of this action in Maryland the only factor to be considered, we would deem it inappropriate to predicate its demise on the ground that it is unreasonable and anachronistic. However, there is an additional factor of sufficient significance to persuade us that the action for criminal conversation is no longer viable.

In 1972, Art. 46 of the Maryland Declaration of Rights, Maryland's Equal Rights Amendment (ERA), was adopted. It provides:

> "Equality of rights under the law shall not be abridged or denied because of sex."

In *Geelhoed,* the only case subsequent to the passage of the ERA in which this Court recognized that the action for criminal conversation remained viable, we did not consider the impact of the ERA. We shall here consider the impact of that Amendment upon this cause of action.

In *Rand v. Rand,* 280 Md. 508, 374 A.2d 900 (1977), we considered the impact of the ERA on the common law obligation of the father to support his minor children. Chief Judge Murphy, speaking for the majority, said:

> "[W]e believe that the 'broad, sweeping, mandatory language' of the amendment is cogent evidence that the people of Maryland are fully committed to equal rights for men and women. The adoption of the E.R.A. in this state was intended to, and did, drastically alter traditional views of the validity of sex-based classifications." [*Rand,* 280 Md. at 515-16, 374 A.2d at 904-05.]

In explaining the effect of the ERA, he quoted *Henderson v. Henderson,* 458 Pa. 97, 101, 327 A.2d 60, 62 (1974) (per curiam), which said:

> " 'The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of

citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman.'" [*Rand,* 280 Md. at 513, 374 A.2d at 903.]

Finally, in explicating this Court's holding that it would be unconstitutional to impose a burden on fathers which was not equally imposed on mothers, he said:

"Applying the mandate of the E.R.A. to the case before us, we hold that the parental obligation for child support is not primarily an obligation of the father but is one shared by both parents. The clear import of the language of Art. 72A, § 1, standing alone, seemingly compels that result. Any doubt remaining from the past failure of the courts to so interpret that statutory provision is removed by the gloss impressed upon it by the E.R.A. The common law rule is a vestige of the past; it cannot be reconciled with our commitment to equality of the sexes. Sex of the parent in matters of child support cannot be a factor in allocating this responsibility. Child support awards must be made on a sexless basis." [*Rand,* 280 Md. at 516, 374 A.2d at 905.]

*Accord, Bell v. Bell,* 38 Md. App. 10, 14, 379 A.2d 419, 421 (1977); *Coleman v. State,* 37 Md. App. 322, 327-29, 377 A.2d 553, 556-57 (1977).

Applying these principles to the instant case produces a clear result. At common law, the action for criminal conversation provided different benefits to and imposed different burdens upon men and women. Only a man could sue or be sued for criminal conversation. These facts remain unchanged under the common law as it exists in Maryland

today.[4] A man has a cause of action for criminal conversation, but a woman does not. Moreover, a man who engages in an act of sexual intercourse with another man's wife is civilly liable for damages, but a woman who engages in a similar activity with another woman's husband is not. Thus, Maryland's law provides different benefits for and imposes different burdens upon its citizens based solely upon their sex. Such a result violates the ERA. Any previous implicit approval by this Court of the action for criminal conversation is eradicated by the existence of the ERA. The common law cause of action for criminal conversation is a vestige of the past. It cannot be reconciled with our commitment to equality of the sexes.

We now hold that in Maryland the cause of action for criminal conversation is unconstitutional and is no longer viable. Accordingly, we shall reverse that portion of the

---

4. Courts in other jurisdictions have interpreted married women's acts as enabling women to sue or be sued for criminal conversation. *See, e.g.,* Karchner v. Mumie, 398 Pa. 13, 17, 156 A.2d 537, 539 (1959); Newsom v. Fleming, 165 Va. 89, 92-95, 181 S.E. 393, 395-96 (1935); Woodman v. Goodrich, 234 Wis. 565, 567, 291 N.W. 768, 769-70 (1940). Maryland's married women's act cannot be so interpreted.

Md. Code (1957, 1971 Repl. Vol.), Art. 45, § 5, provides that:

"Married women shall have power to . . . sue . . . for torts committed against them, as fully as if they were unmarried. . . ."

In Wolf v. Frank, 92 Md. 138, 143-44, 48 A. 132, 134-35 (1900), this Court held that at common law a married woman "had a cause of action" for alienation of affections, and that under Maryland's married women's act, she was entitled to maintain such a suit in her own name. Thereafter, this Court repeatedly construed the act more restrictively and limited its effect. Fernandez v. Fernandez, 214 Md. 519, 521, 135 A.2d 886, 887 (1957). This Court held that the act was not intended to create rights additional to those enjoyed by a single woman at common law, but rather was limited to removing a woman's legal disability, resulting from marriage, to sue in her own name. Hudson v. Hudson, 226 Md. 521, 524, 174 A.2d 339, 340-41 (1961); Fernandez, 214 Md. at 522, 135 A.2d at 887-88; Furstenburg v. Furstenburg, 152 Md. 247, 252-53, 136 A. 543, 536 (1927). *See* Thompson v. Thompson, 218 U.S. 611, 616-18, 31 S. Ct. 111, 112 (1910); Stokes v. Association of Independent Taxi Operators, Inc., 248 Md. 690, 691-92, 237 A.2d 762, 763 (1968) (per curiam). Thus, because at common law a woman did not have the right to maintain an action for criminal conversation, the married women's act did not extend that right to her.

judgment relating to criminal conversation. That portion of the judgment relating to assault shall be affirmed.[5]

> *Judgment as to criminal conversation (count one) reversed; case remanded to the Circuit Court for Washington County for further action in accordance with this opinion.*
>
> *Judgment as to assault (count two) affirmed.*
>
> *Costs to be equally divided.*

---

5. In view of our decision, we need not consider the paramour's contention that the trial court committed reversible error in excluding evidence of the husband's prior conviction on the ground that it was too remote in time to be relevant to the issues of the quality of the marriage and mitigation of damages for criminal conversation. Neither the paramour's contention that the excluded evidence was relevant to the issue of credibility nor his other contentions with respect to damages was raised or decided below, and therefore is not properly preserved for review. Md. Rule 885.