873 P.2d 881

**Thomas A. NEAL, Plaintiff–Counterdefendant Respondent,**

v.

**Mary NEAL, Defendant–Counterplaintiff–Appellant,**

**and**

**Jill LA GASSE, Counterdefendant–Respondent.**

No. 19086.

Court of Appeals of Idaho.

June 29, 1993.

Review Granted July 30, 1994.

Appeal Decided, see 873 P.2d 871.

Marcus, Merrick & Montgomery, Boise, for appellant. Craig Marcus argued.

Ringert, Clark, Chtd; Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Jeffrey R. Christenson argued for respondent Thomas A. Neal and Kirk R. Helvie argued for respondent Jill LaGasse.

## SUBSTITUTE OPINION

The Court's prior opinion, dated April 26, 1993, is hereby withdrawn.

WALTERS, Chief Judge.

This is an appeal from an order dismissing a wife's action for damages allegedly suffered as a result of the adulterous relationship

between her husband and his mistress. On review, we are asked to decide whether a party has an actionable right to an exclusive sexual relationship with his or her spouse. We also consider whether, under the facts alleged, a party may recover for mental anguish resulting from the fear that he or she may have contracted sexually transmitted diseases. Finally, we address whether the facts alleged are sufficient to constitute a civil battery for which nominal damages may be awarded. As explained below, we answer these questions in the negative and affirm the district court's order of dismissal.

## I.

### Facts and Procedural Background

For purposes of this review, we deem the following facts to be true. Thomas and Mary Neal were married in 1984. They had one child. In 1988, the couple moved to Boise where Thomas, a licensed physician, took a residency at a local medical clinic. His work also took him to Spokane, Washington, the home of Jill LaGasse. In November of 1988, Thomas and LaGasse began an extra-marital affair which they kept secret from Mary for approximately five months. During this time Thomas engaged in sexual intercourse with Mary and also with LaGasse. Mary did not discover the affair until the spring of 1989, when she confronted Thomas with her suspicions. Thomas admitted the relationship and advised he wanted a divorce.

In 1990, Thomas filed an action for divorce in the magistrate's court. Mary responded with an answer and counterclaim asking that she be granted the divorce on grounds of adultery, extreme cruelty, and wilful desertion, and that the magistrate make a disproportionate property award in her favor. She also asked that the decree award her spousal maintenance, child custody and child support. Mary asserted additional counterclaims to recover damages for the tortious interference with her marital relationship and for her emotional distress suffered as a result of her fear of contracting sexually transmitted diseases. Viewing these damages claims to be beyond its jurisdiction, the magistrate transferred the matter to the district court. The district judge bifurcated the action and remanded to the magistrate the issues pertaining to the divorce, including property division, spousal support, child custody and child support. Those matters were decided by the magistrate and are not before us in this appeal. The district court retained Mary's action for damages. Subsequently, Mary filed an amended pleading in the district court joining her husband's mistress, Jill LaGasse, as an additional party counterdefendant under I.R.C.P. 18 and 19. Thomas and LaGasse then filed for dismissal under I.R.C.P. 12(b)(6), contending that the amended pleading failed to state any claim upon which relief could be granted. In support of his motion, Thomas Neal submitted evidentiary material consisting of his affidavit and extracts from the deposition of Mary Neal. The court accepted these materials and the motion was converted to a proceeding for summary judgment, as required under the last section of Rule 12(b).[1]

In her brief in response,[2] Mary advanced various theories of recovery based on the right to damages for the intentional interference with and invasion of her marital relationship. She also argued that she was entitled to damages for her emotional distress resulting from the fear that she may have contracted AIDS, herpes, or other sexually transmitted diseases. After considering the

---

1. Idaho Rule of Civil Procedure 12(b) provides, in part:

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, *the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (Emphasis added.)

2. Mary Neal did not file a brief in response to the summary judgment motion, but orally argued her position to the court. Following the district court's decision granting the motion to dismiss, Mary Neal filed a "motion for reconsideration" extensively briefing her theories of recovery. Over the objections of Thomas Neal and Jill LaGasse, the district court accepted the brief and permitted oral argument. After reviewing Mary's submissions and argument, the court denied her motion for reconsideration.

materials and arguments of the parties, the district court dismissed Mary's action. Mary filed this appeal.

## II.

### Issues Presented and Standard of Review

This appeal presents the following issues for review:

(A) whether Mary has an actionable right to an exclusive sexual relationship with her husband;

(B) whether, under the facts alleged, Mary can recover damages for emotional distress resulting from her fear that she may have contracted sexually transmitted diseases; and

(C) whether, under the facts alleged, Mary can recover nominal damages for battery.

As noted above, the motion for dismissal was converted to and disposed of as a motion for summary judgment under I.R.C.P. 56, as required under the last section of Rule 12(b). Accordingly, the standards applicable to a summary judgment govern our review. On appeal from an order granting summary judgment, we will review the pleadings, depositions, and admissions on file, together with .the affidavits, if ·any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Ray v. Nampa School Dist. No. 131,* 120 Idaho 117, 814 P.2d 17 (1991). Standards applicable to summary judgment require the district court, and the appellate court on review, to liberally construe facts in the existing record, and draw all reasonable inferences therefrom, in favor of the party opposing the motion. *Ray,* 120 Idaho at 122, 814 P.2d at 19. We note, however, that the existence of disputed facts will not defeat summary judgment when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to its claim, and on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Garzee v. Barkley,* 121

Idaho 771, 828 P.2d 334 (Ct.App.1992). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be "no genuine issue of material fact," since the failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

With these standards in mind, we turn to the issues presented by this appeal.

### A. Recovery for interference with the marital relationship.

■ Mary Neal seeks to recover for the respondents' adulterous conduct which she contends is actionable under the tort theories of criminal conversation, invasion of privacy, and interference with contract. Mary recognizes that the Idaho Supreme Court expressly has abolished the spousal right of action for alienation of affections, thereby barring recovery based on the loss of her husband's love, society, companionship and comfort. *See O'Neil v. Schuckardt,* 112 Idaho 472, 733 P.2d 693 (1987). She argues, however, that *O'Neil* did not proscribe her right to maintain an action for interference with her exclusive sexual relationship with her husband. She further avers that her right of action for adultery is grounded in I.C. § 32–901, which provides that a spouse has a marital duty of fidelity, and I.C. § 18–6601, which provides a criminal penalty for adultery, and therefore cannot be judicially abolished. We address these issues in turn.

Mary submits that notwithstanding the decision in *O'Neil,* the tort of criminal conversation, evidently recognized in Idaho in the case of *Watkins v. Lord,* 31 Idaho 352, 171 P. 1133 (1918),[3] is and should remain a viable cause of action in Idaho. Criminal conversation—adultery in the aspect of a tort—is one of several causes of action available at common law for the intentional interference with the marital relationship. Criminal conversation seeks to protect a spouse's private right to exclusive sexual intercourse and is, in this

---

**3.** The *Watkins* decision has not been revisited since 1918, and there are no other appellate decisions in Idaho dealing with this tort.

regard, distinct from the right to conjugal affection, which may or may not involve sexual misconduct. *See* PROSSER AND KEETON ON TORTS § 124, at 916–19 (5th ed. 1984). Both actions, however, have their genesis in the proposition that one spouse has property rights in the other, a premise that has been condemned by modern courts and authorities as an anachronism. *See, e.g.,* *O'Neil,* 112 Idaho at 475, 733 P.2d at 696; PROSSER AND KEETON, *supra,* § 124, at 917.

Although sexual misconduct was not involved in *O'Neil,* the Court, at least by reference, contemplated the harm occasioned where such behavior is actionable:

> The primary purpose in bringing the action is often for the plaintiff to vindicate himself and gain revenge on the other spouse and the defendant. The unplanned nature of the tort, *at least where sexual activities are involved,* makes the threat of any damage suit unlikely to deter the culpable conduct that has allegedly interfered with the marriage....
>
> The suit also exposes defendants to the extortionate schemes of the plaintiff. Since the suit may well ruin the reputation of the defendant, this often creates an incentive for the plaintiff to bring the suit in hopes of forcing an expensive settlement on the defendant. This is especially true where the suit is related to divorce proceedings and the plaintiff is using the suit vengefully against the defendant and the alienated spouse....

*Id.,* 112 Idaho at 477, 733 P.2d at 698 (emphasis added; citations omitted). Rejecting the *purported* purpose for the action, which is to discourage third persons from weakening marriages, the Court noted that the initiation of such a lawsuit undermines a marriage by notifying the public of its instability, embarrassing family members and increasing family tension. *Id.,* 112 Idaho at 477, 733 P.2d at 698. The Court ultimately concluded that the many ill effects of the tort of alienation outweighed any benefits it may have, and abolished the cause of action in Idaho. *Id.* We believe that the clearly stated policies and rationale underlying the Court's decision to abolish the tort of alienation in

*O'Neil* apply with equal force to compel abolition of the tort of criminal conversation.

Abolition of this tort has also been called for in the treatise PROSSER AND KEETON ON TORTS, an authority drawn upon by the Court in *O'Neil,* wherein the authors observe:

> Those actions for interference with domestic relations which carry an accusation of sexual misbehavior—that is to say, criminal conversation, seduction, and to some extent alienation of affections—have been peculiarly susceptible to abuse. Together with the action for breach of promise to marry, it is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement. There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives; that it is impossible to compensate for such damage with what has derisively been called "heart balm;" that people of any decent instincts do not bring an action which merely adds to the family disgrace; and that no preventive purpose is served, since such torts seldom are committed with deliberate plan. Added to this is the increasing recognition that each spouse is an autonomous human being, that neither is the property of the other, and that a home so easily broken is not worth maintaining.

PROSSER AND KEETON, *supra,* § 125, at 929–30. We also acknowledge that the tort of criminal conversation has been abolished, either legislatively or judicially, in a majority of jurisdictions in this country. *See Lentz v. Baker,* 792 S.W.2d 71, 75 (Tenn.App.1989) (counting thirty-five jurisdictions that had abolished or severely limited the torts of marital interference—alienation of affections, criminal conversation and seduction).

While this Court does not condone sexual promiscuity and continues to hold marriage in the highest esteem, we are persuaded that a civil action for damages does not necessarily serve to protect that worthy institution. We agree with the district judge that the abolition of the tort of criminal conversation is the natural and rational extension of the

Supreme Court's holding in *O'Neil*, and that, despite the antiquated ruling in *Watkins v. Lord*, such is the correct state of the law in Idaho.

■ We further reject Mary's argument that I.C. § 32–901, creating a duty of spousal fidelity, gives rise to an action for damages for the invasion of her exclusive sexual relationship with her husband. Idaho Code § 32–901 provides "Husband and wife contract toward each other obligations of mutual respect, fidelity and support." Contrary to Mary's contention, however, the breach of any of these statutory duties does not create a right of action separate from an action for divorce. Rather, the exclusive remedies for such breaches are provided in the divorce statutes. Thus, breach of these duties may be grounds for divorce. *See* I.C. § 32–603. Moreover, the fault of one spouse may affect his or her obligation to pay maintenance to the other.[4] In this case, the remedies accorded by the divorce statutes were fully preserved to Mary Neal in the proceedings remanded to the magistrate. Mary has no additional right of action.

■ Further, we conclude that the fact that adultery remains punishable by criminal statute does not prevent the judicial abolition of the civil tort of criminal conversation. A civil action for criminal conversation arises from the violation of a private right, and is distinct from a criminal action for adultery, which seeks recompense for a public wrong. Thus, the existence of a criminal statute proscribing adultery does not prevent the elimination of the civil cause of action for criminal conversation. *See, e.g., Kline v. Ansell,* 287 Md. 585, 414 A.2d 929 (Md.1980); *Lynn v. Shaw,* 620 P.2d 899, 903 n. 13 (Okl.1980).

[4] For the reasons explained above, we hold that Idaho civil law does not afford a party an actionable right to exclusive sexual intercourse with his or her spouse. In so holding, we extend the Idaho Supreme Court's rationale in *O'Neil* to abolish the tort of criminal conversation. Because Mary's alternative theories for recovery—tortious invasion of privacy and tortious interference with contract—seek damages for the infringement of that same right, these claims similarly must fail. We conclude, therefore, that the district court correctly dismissed appellant's claims to recover for the interference with and invasion of her right to an exclusive sexual relationship.

### B. Recovery for emotional distress for fear of contracting disease.

■ Independent from her action to recover for the interference with her marital relationship, Mary seeks to recover for emotional distress resulting from her fear that she may have contracted AIDS, herpes, or other sexually transmitted diseases. She contends that this emotional injury is recoverable under theories of negligent infliction of emotional distress, intentional infliction of emotional distress, and battery. For purposes of our discussion, we accept the fact that Thomas Neal's sexual misconduct subjected his wife to a risk of acquiring such diseases *if* carried by Jill. However, as Mary concedes, she is unable to demonstrate that she was actually exposed to these diseases. She has not alleged that any of the parties involved were infected with any of these diseases. Thus, our inquiry in this case is whether, under the circumstances presented, Mary's fear of developing a disease constitutes a legally compensable injury; for unless the injury is compensable, it will not support a claim for damages under any theory of recovery. Because the issue has not been addressed before in Idaho,[5] we will look to other authority for guidance.

---

4. At the time this action arose, the statute provided that if the court granted the divorce on grounds of fault, the offending spouse was ineligible for an award of maintenance. *See* former I.C. § 32–705. The legislature has since amended the statute to provide that fault is but one of the several factors which the court may consider when it determines the amount and duration of an otherwise appropriate award of maintenance. *See* 1990 Idaho Sess.Laws, ch. 336, § 1, p. 916.

5. In *DeMoss v. City of Coeur D'Alene,* 118 Idaho 176, 795 P.2d 875 (1990), the Idaho Supreme Court considered whether the plaintiffs, who feared they might develop cancer in the future as a result of their inhalation of asbestos fibers, but who alleged no present physical injury, had stated a claim under 42 U.S.C. § 1983.

■ Many jurisdictions have allowed damages for emotional distress resulting from the present fear of developing a disease in the future where the disease has a latency or incubation period, such as cancer, tuberculosis, or AIDS. *See* Annot., *Future Disease of Condition, or Anxiety Relating Thereto, as Element of Recovery*, 50 ALR4th 13, §§ 3–42 (1986). In such cases, damages are recoverable only if the mental injury alleged is shown to be sufficiently genuine and the fear reasonable. *See, e.g., Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367 (N.D.Ill.1988); *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (Md.Ct.App.1993); *Comment, Tort Liability for the Transmission of the AIDS Virus: Damages for fear of AIDS and Prospective AIDS*, 45 WASH. & LEE L.REV. 185, 189 (1988). Although disputed by the respondents, Mary has met the genuineness requirement by averring sufficient physical injury in the form of her disrupted menstrual cycle, weight loss, loss of sleep, and stomach pain.[6]

Our concern in this case, however, is not whether Mary's emotional distress is sufficiently genuine, but whether her fear meets the reasonableness standard absent a showing that she was actually exposed to a disease.[7] We observe that in the reported cases permitting a plaintiff to recover for fear of cancer from exposure to carcinogens, the fact of exposure has always been established. *See, e.g., Clark v. Taylor*, 710 F.2d 4 (1st Cir.1983) (defendant directly applied benzidine, a carcinogen, to plaintiff's arms and upper body); *Herber v. Johns–Mansville Corp.*, 785 F.2d 79 (3rd Cir.1986) (plaintiff ingested asbestos fibers); *Jackson v. Johns Mansville Sales Corp.*, 781 F.2d 394 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986) (same); *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir.1986) (plaintiff's entire body had been accidentally drenched in diprolene, a known carcinogen); *Anderson v. W.R. Grace & Co.*, 628 F.Supp. 1219 (D.Mass.1986) (plaintiffs drank water contaminated by carcinogens); *Delvin v. Johns–Mansville Corp.*, 202 N.J.Super. 556, 495 A.2d 495 (N.J.Sup. 1985) (plaintiff ingested asbestos fibers); *compare Wisniewski v. Johns–Mansville Corp.*, 759 F.2d 271 (3rd Cir.1985) (requiring "linkage" between emotional injury and exposure to asbestosis fibers). *See also* Gale & Goyer, *Recovery for Cancerphobia and Increased Risk of Cancer*, 15 CUMB.L.REV. 723, 730 (1985). Plaintiffs also have been permitted to recover for their fear of developing tuberculosis where they were exposed to active tuberculosis with the result that their bodies were infected by dormant tubercle bacilli. *See* Plummer v. United States, 580 F.2d 72 (3rd Cir.1978).

The similarities between terminal cancer and AIDS—their latent manifestation and their deadly, incurable nature—have led courts and commentators to analyze actions for fear of contracting AIDS under the same standards as actions for fear of developing cancer. *See Burk v. Sage Products, Inc*, 747 F.Supp. 285 (E.D.Penn.1990); *Comment, Tort Liability for the Transmission of the AIDS Virus: Damages for Fear of AIDS and Prospective AIDS*, 45 WASH. & LEE L.REV. 185 (1988). Thus, many decisions recognizing the fear of AIDS as a compensable injury have required that a plaintiff establish that he or she was exposed to the disease before allowing recovery. In *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Penn.1990), a paramedic sought to recover damages for his fear of contracting AIDS after he was stuck by a discarded hypodermic needle. Dismissing the claim,

**6.** Where a plaintiff seeks to recover for emotional distress on the basis of the defendant's mere negligence, genuineness must be established by some physical injury, whether a cause or manifestation of the emotional distress. *See Czaplicki v. Gooding Joint School Dist.*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989); *Gill v. Brown*, 107 Idaho 1137, 1138, 695 P.2d 1276, 1277 (Ct.App.1985). However, where the plaintiff seeks to recover under the theory of intentional infliction of emotional distress, the extreme and outrageous conduct of the defendant and the severity of the emotional distress suffered by the plaintiff are deemed sufficient to guarantee the genuineness of the claimed injury. *Bethel v. Van Stone*, 120 Idaho 522, 528–29, 817 P.2d 188, 194–95 (Ct.App.1991).

**7.** This issue is discussed in a recent article in a national publication. *See* Brian R. Garves, *In Fear-of-AIDS Cases, Proof is Key Element; Can a Plaintiff Recover Without Actual Exposure to the Disease?*, Nat'l L.J., April 26, 1993, 27, at 30–32.

the court concluded that although emotional injuries for fear of AIDS may be compensable under Pennsylvania law, the plaintiff's alleged injuries were not actionable because he could not show that the needle had been used on an AIDS patient, and therefore could not establish an exposure to the AIDS virus. *Id.*, 747 F.Supp. at 286. The court stated that "while injuries stemming from a fear of contracting illness after exposure to a disease-causing agent may present compensable damages, injuries stemming from fear of the initial exposure do not." 747 F.Supp. at 287.

Applying the reasonableness standard prescribed in *Burk*, the West Virginia Supreme Court of Appeals permitted recovery in the case of a security officer who had been bitten by a hospital patient suffering from AIDS. *See Johnson v. West Virginia University Hospitals, Inc.*, 186 W.Va. 648, 413 S.E.2d 889 (W.Va.1991). Following those decisions that had disallowed damages where the plaintiffs feared, but could not establish, exposure to the AIDS virus, the court held that "before recovery for emotional distress damages may be made due to a fear of contracting a disease, such as AIDS, there must first be *exposure* to the disease. If there is no exposure, then emotional distress damages will be denied." *Id.*, 413 S.E.2d at 893 (emphasis original).[8] Noting that the expert testimony had established that the blood of the AIDS infected patient came into contact with the blood of the plaintiff,[9] the court concluded that the requisite exposure had occurred. *Id.*

Several courts also have refused to allow recovery for fear of AIDS where the plaintiff established his close physical proximity to blood or bodily fluids contaminated with AIDS, but failed to show contact with the contaminant through an avenue by which the disease is transmitted. *See Ordway v. County of Suffolk*, 154 Misc.2d 269, 583 N.Y.S.2d 1014 (N.Y.Sup.Ct.1992) (plaintiff who performed surgery on an AIDS-infected patient while himself protected by surgical garments failed to show actual exposure had occurred); *Funeral Services by Gregory, Inc. v. Bluefield Community Hospital*, 186 W.Va. 424, 413 S.E.2d 79 (W.Va.1991) (mortician, who wore protective clothing while embalming AIDS-infected corpse, failed to establish facts showing actual exposure to the disease); *but see Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (Md.Ct.App.1993).[10]

We believe that by imposing a standard of actual exposure, the law ensures that there exists a rational, non-speculative basis for the fear of developing the disease.[11] However, we are aware of several recent decisions in which courts have permitted recovery for fear of AIDS, absent proof of exposure. In each of these cases, the plaintiff sustained an accidental prick from a discarded hypodermic needle, the source and contaminants of which were unknown and evidently unknowable to the plaintiff. *See Marchica v. The Long Island Rail Road*, 810 F.Supp. 445 (E.D.N.Y.1993) (action under Federal Employers Liability Act); *Castro v. New York Life Ins. Co.*, 153 Misc.2d 1, 588 N.Y.S.2d 695 (N.Y.Sup.Ct.1991) (interpreting New York law)[12]; *and Carroll v. The Sisters*

8. The *Johnson* court additionally relied upon the following cases to arrive at its holding: *Hare v. State*, 173 A.D.2d 523, 570 N.Y.S.2d 125 (N.Y.App.Div.1991) (hospital employee bitten by patient "merely rumored" to have AIDS could not recover emotional distress damages arising from fear of contracting AIDS); *Doe v. Doe*, 519 N.Y.S.2d 595 (N.Y.Sup.Ct.1987) (where wife alleged her husband had an undisclosed homosexual relationship but was unable to show he was infected with AIDS, she could not recover for emotional distress based on her *risk* of exposure to AIDS).

9. At the time the patient bit the plaintiff, the patient had his own AIDS-infected blood in his mouth as a result of a self-inflicted bite.

10. The plaintiffs in *Faya* sought to recover for their fear that they had contracted AIDS as a consequence of undergoing invasive surgery by a doctor infected with the AIDS virus. Although the plaintiffs did not identify any actual channel of transmission, the appellate court declined to hold their fear of acquiring AIDS was unreasonable as a matter of law. 620 A.2d at 336, (1993 WL 60500, at 9).

11. *But see Petri v. Bank of New York Co.*, 582 N.Y.S.2d 608 (N.Y.Sup.1992) (mere exposure to AIDS is insufficient to provide a rational, non-speculative basis for the fear of developing the disease).

12. Attempting to reconcile the trial court's decision in *Castro* with previous, seemingly inconsis-

*of Saint Francis Health Services, Inc.*, 1992 WL 276717 (Tenn.App.1992), *appeal granted* (Feb. 22, 1993) (interpreting and applying Tennessee case law).[13] Notwithstanding these three decisions to the contrary, we conclude that in order to be actionable, a plaintiff's fear of a disease must be based on more than the mere possibility of exposure to a disease or disease-causing agent. To hold otherwise would invite claims, and allow recovery, for the fear of AIDS where the plaintiff had undergone a blood transfusion, for the fear of developing tuberculosis based on evidence that a person had coughed in the plaintiff's face, or for fear of cancer where the plaintiff had inhaled or ingested an unknown substance, all without any proof that a disease-causing agent was present. The theoretical basis for Mary Neal's exposure to the diseases she fears in this case is even more attenuated: it is founded on the factually unsupported—and not alleged—premise that Jill LaGasse might have carried the diseases, which then *may* have been transmitted through her sexual intercourse with Thomas, who then *may* have transmitted the diseases to Mary. We decline to extend the law to recognize emotional injuries on so remote and tenuous a basis, where there is no showing that LaGasse actually was infected with or suffers from any sexually transmitted disease. We conclude that, although emotional distress resulting from the fear of contracting a disease may constitute a compensable injury in Idaho, such damages are not recoverable, as a matter of law, under the circumstances alleged in this case. The district court did not err in dismissing Mary's claims for emotional distress.

### C. Recovery of nominal damages for battery.

■ Finally, Mary contends that even though she has not alleged a compensable injury, she nonetheless has alleged a prima facie case of battery, and that under that theory she may be entitled to an award of nominal damages. *See Pierson v. Brooks*, 115 Idaho 529, 768 P.2d 792 (Ct.App.1989). A civil battery consists of any intentional, unpermitted contact upon the person of another, which is either unlawful, harmful, or offensive. *See White v. University of Idaho*, 118 Idaho 400, 797 P.2d 108 (1990); *Pierson*, 115 Idaho at 537, 768 P.2d at 800; W. PROSSER AND W. KEETON, THE LAW OF TORTS § 9 at 41 (5th ed. 1984). Lack of consent to the particular contact is an essential element of battery. PROSSER & KEETON, *supra,* § 9, at 41 *and* § 18, at 112. The critical inquiry here is whether Mary has alleged facts sufficient to show that there was an absence of effective consent by her to engage in sexual intercourse with Thomas. Mary asserts that although she consented to sexual intercourse with her husband, Thomas, at the time, she would not have done so had she known he was sexually involved with another woman. Therefore, she argues, Thomas' failure to disclose the fact of his extra-marital affair rendered her consent ineffective, and subjected him to liability for battery. We disagree.

■ Where a person's consent to physical contact is given based upon a substantial mistake, known to or induced by the actor, concerning the nature of the contact itself or the extent of the harm to be expected therefrom, the consent is deemed to be ineffective, and the actor may be held liable as if no consent had been given. *See* RESTATEMENT (SECOND) OF TORTS § 57 (1965); RESTATEMENT (SECOND) OF TORTS § 892B(2) (1979). For this rule to apply, however, the mistake must extend to the essential character of the act itself, rather than to some collateral matter which merely operates as an inducement. *See* PROSSER

---

tent state court decisions, one commentator has explained that a plaintiff's fear is "more reasonable" where source of contaminant is unknowable. *See Aids Phobia and Negligent Infliction of Emotional Distress*, H. Lipsig, *AIDS Phobia and Negligent Infliction of Emotional Distress*, N.Y.L.J., at 3, 4 (March 26, 1992).

**13.** The holding of the majority in *Carroll* is based on its reading of *Laxton v. Orkin Exterminating*

*Co.*, 639 S.W.2d 431 (Tenn.1982), which had permitted plaintiffs to recover for their mental anguish resulting from fear of future ill health where they had "ingested an indefinite amount of a harmful substance." *Id.*, 639 S.W.2d at 434. We do not believe that the holding in *Laxton* supports the decision reached by the majority in *Carroll*.

AND KEETON, *supra,* § 18, at 120. "This is true, in general, whenever the other has given his consent with full understanding of the conduct, the invasion of his interests and the harm expected to follow, but has done so because of a mistake concerning some other reason for consenting." RESTATEMENT, *supra* § 892B(2) *comment g.*

In this case, we conclude that Thomas' failure to disclose his relationship with Jill LaGasse did not invalidate Mary's consent to engage in sexual intercourse with him. Although Thomas deceived Mary as to the exclusivity of their relationship—a factor arguably[14] bearing upon her consent to sexual intercourse with him—it did not directly or substantially relate to the essential nature of the physical contact she consented to. Thus, Mary's misapprehension concerning Thomas' sexual fidelity did not operate to invalidate her consent to engage in sexual intercourse with him. Accordingly, we hold that Mary's allegations are insufficient to establish lack of consent. Her claim for battery, therefore, was properly dismissed.

### III.

#### Conclusion

We hold that a party may not maintain an action for the interference with or invasion of the exclusive sexual relationship with his or her spouse. We further hold that, under the circumstances presented in this case, damages are not recoverable for mental anguish resulting from the fear of contracting a disease. Finally, we hold that the allegations are insufficient to support a claim for battery. Accordingly, we conclude that the district court properly dismissed Mary Neal's counterclaims against Thomas Neal and Jill LaGasse.

The district court's order of dismissal is affirmed. Costs to respondents, Thomas Neal and Jill LaGasse. No attorney fees on appeal.

SWANSTROM, J., concurs.

SILAK, Acting Judge, specially concurring:

I write to concur specially in section II C of the majority opinion, and concur fully in the remainder of the opinion.

While I agree that the elements of battery and more specifically that of consent were properly stated by the majority in section II C, I disagree with the essential character (or nature) analysis under the consent prong. In my view the majority should follow the rule stated in RESTATEMENT (SECOND) OF TORTS § 892B(2):

Consent Under Mistake, Misrepresentation or Duress

.    .    .    .    .

(2) If the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

Applying this general rule to the facts here, Mrs. Neal gave her consent to sexual intercourse with her husband based upon her understanding that he was faithful within the marriage and thus not exposing either himself or his wife to the risk of contracting a sexually transmitted disease (STD). Mrs. Neal might have been substantially mistaken as to the nature of the extent of harm to be expected from her sexual relationship with her husband if he had actually been exposed to an STD. Dr. Neal knew of the "mistake," since he alone knew about his sexual relationship outside the marriage and did not reveal it to Mrs. Neal (at least before certain of the acts of sexual intercourse).

However, the record before us reflects that, fortunately and fortuitously, neither Mrs. Neal nor her ex-husband tested positive for any STD, including the HIV virus. I concur specially in the result, therefore, because I believe that only where the complaining spouse is actually exposed to an STD does there exist the type of "substantial mis-

---

**14.** The record reveals that after Mary discovered Thomas' extra-marital affair, she consented to sexual intercourse with him on at least one occasion.

take" that would vitiate the consent to sexual relations. As the majority states in a different context in section II B above, the "standard of actual exposure ... ensures that there exists a rational, non-speculative basis" for the assertion of an invasion of a protected interest.